IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SIMON BERNSTEIN IRREVOCABLE INSURANCE TRUST DTD 6/21/95, <br><br> Plaintiff, <br><br> v. <br><br> HERITAGE UNION LIFE INSURANCE COMPANY, <br><br> Defendant. <br> ------------------------------------------------- <br> HERITAGE UNION LIFE INSURANCE COMPANY, <br><br> Counter-Plaintiff, <br><br> v. <br><br> SIMON BERNSTEIN IRREVOCABLE INSURANCE TRUST DTD 6/21/95, <br><br> Counter-Defendant, <br> and, <br><br> FIRST ARLINGTON NATIONAL BANK, as Trustee of S.B. Lexington, Inc. Employee Death Benefit Trust, UNITED BANK OF ILLINOIS, BANK OF AMERICA, successor in interest to LaSalle National Trust, N.A., SIMON BERNSTEIN TRUST, N.A., TED BERNSTEIN, individually and as purported Trustee of the Simon Bernstein Irrevocable Insurance Trust Dtd. 6/21/95, and ELIOT BERNSTEIN, <br><br> Third-Party Defendants. | Case No. 13 cv 3643 <br><br> Honorable Amy J. St. Eve <br> Magistrate Mary M. Rowland |

**JACKSON'S (1) ANSWER TO COMPLAINT AND (2) COUNTERCLAIM
AND THIRD-PARTY COMPLAINT FOR INTERPLEADER**

Defendant, Jackson National Life Insurance Company ("Jackson"), as successor in interest to Reassure America Life Insurance Company, successor in interest to Heritage Union

Life Insurance Company, makes the following (1) answer to Plaintiff's complaint and (2) counterclaim and third-party complaint for interpleader:

## ANSWER

1. At all relevant times, the Bernstein Trust was a common law trust established in Chicago, Illinois by the settlor, Simon L. Bernstein, and was formed pursuant to the laws of the State of Illinois.

ANSWER: Jackson lacks sufficient information and knowledge to form a belief as to the truth of the allegations of this paragraph and therefore denies the same.

2. Ted S. Bernstein is the Trustee of the Bernstein Trust.

ANSWER: Jackson lacks sufficient information and knowledge to form a belief as to the truth of the allegations of this paragraph and therefore denies the same.

3. At all relevant times, the Bernstein Trust was a beneficiary of a life insurance policy insuring the life of Simon L. Bernstein, and issued as policy number 1009208 (the "Policy").

ANSWER: Jackson lacks sufficient information and knowledge to form a belief as to the truth of the allegations of this paragraph and therefore denies the same.

4. The Policy was originally purchased by the S.B. Lexington, Inc. 501(c)(9) VEBA Trust (the "VEBA") from Capital Bankers Life Insurance Company ("CBLIC") and was delivered to the original owner in Chicago, Illinois on or about December 27, 1982.

ANSWER: Jackson lacks sufficient information and knowledge to form a belief as to the truth of the allegations of this paragraph and therefore denies the same.

5. At the time of issuance and delivery of the Policy in 1982, CBLIC was an insurance company licensed and doing business in the State of Illinois, and the insured, Simon L. Bernstein, was a resident of the state of Illinois.

ANSWER: Jackson lacks sufficient information and knowledge to form a belief as to the truth of the allegations of this paragraph and therefore denies the same.

6. Heritage subsequently assumed the Policy from Capital Bankers and thus became the successor to CBLIC as "Insurer" under the Policy.

ANSWER: Jackson lacks sufficient information and knowledge to form a belief as to the truth of the allegations of this paragraph and therefore denies the same.

7. In 1995, the VEBA, as owner of the Policy, executed a beneficiary change form naming LaSalle National Trust, N.A., as Trustee of the VEBA, as primary beneficiary of the Policy, and the Bernstein Trust as the contingent beneficiary.

ANSWER: Jackson lacks sufficient information and knowledge to form a belief as to the truth of the allegations of this paragraph and therefore denies the same.

8. S.B. Lexington, Inc. and the VEBA were voluntarily dissolved on or about April 3, 1998.

ANSWER: Jackson lacks sufficient information and knowledge to form a belief as to the truth of the allegations of this paragraph and therefore denies the same.

9. Upon the dissolution of the VEBA in 1998, the Policy ownership was assigned and transferred from the VEBA to Simon L. Bernstein, individually.

ANSWER: Jackson lacks sufficient information and knowledge to form a belief as to the truth of the allegations of this paragraph and therefore denies the same.

10. At the time of his death, Simon L. Bernstein was the owner of the Policy, and the Bernstein Trust was the sole surviving beneficiary under the Policy.

ANSWER: Jackson lacks sufficient information and knowledge to form a belief as to the truth of the allegations of this paragraph and therefore denies the same.

11. The insured under the Policy, Simon L. Bernstein, passed away on September 13, 2012, and on that date the Policy remained in force.

ANSWER: Jackson admits the allegation of this paragraph.

12. Following Simon L. Bernstein's death, the Bernstein Trust, by and through its counsel in Palm Beach County, FL, submitted a death claim to Heritage under the Policy including Simon L. Bernstein's death certificate and other documentation.

ANSWER: Jackson admits the allegation of this paragraph.

13. The Policy, by its terms, obligates Heritage to pay the death benefits to the beneficiary of the Policy upon Heritage's receipt of the due proof of the insured's death.

ANSWER: Jackson admits it, as a successor to Heritage, is obligated to pay the death benefits to the beneficiary(ies) of the Policy, but denies that the remainder of paragraph 13 accurately and fully states the obligations of a beneficiary in submitting a claim under the Policy, and/or when the obligation for Jackson to make such payment becomes due and therefore denies the same.

14. Heritage has breached its obligations under the Policy by refusing and failing to pay the Policy's death benefits to the Bernstein Trust as beneficiary of the Policy despite Heritage's receipt of due proof of the Insured's death.

ANSWER: Jackson lacks sufficient information and knowledge to form a belief as to the true beneficiary of the Policy, resulting in it tendering the death benefit funds to the Court and filing its interpleader counterclaim and third-party complaint, and thus it denies the allegation of this paragraph.

15. Despite the Bernstein Trust's demands Heritage has not paid out the death benefits on the policy to the Bernstein Trust.

ANSWER: Jackson lacks sufficient information and knowledge to form a belief as to the true beneficiary of the Policy, resulting in it tendering the death benefit funds to the Court and filing its interpleader counterclaim and third-party complaint, and thus it denies the allegation of this paragraph.

16. As a direct result of Heritage's refusal and failure to pay the death benefits to the Bernstein Trust pursuant to the Policy, Plaintiff has been damaged in an amount equal to the death benefits of the Policy plus interest, an amount which exceeds $1,000,000.

ANSWER: Jackson denies the allegation of this paragraph.

WHEREFORE, Defendant, Jackson National Life Insurance Company, as successor in interest to Reassure America Life Insurance Company, successor in interest to Heritage Union Life Insurance Company, respectfully requests that it be dismissed from this lawsuit, and requests such other and further relief as the Court deems just and proper.

## COUNTER-CLAIM AND THIRD-PARTY COMPLAINT FOR INTERPLEADER

### INTRODUCTION

1. Jackson National Life Insurance Company ("Jackson") brings this counter-claim and third-party complaint for Interpleader pursuant to 28 U.S.C. § 1335(a) and Federal Rule of Civil Procedure 14, as it seeks a declaration of rights under a life insurance policy for which it is responsible to administer. The proceeds from the policy (the "Death Benefit Proceeds") have been tendered to this Court.

### PARTIES AND VENUE

2. Jackson, successor in interest to Reassure America Life Insurance Company ("Reassure"), successor in interest to Heritage Union Life Insurance Company ("Heritage"), is a corporation organized and existing under the laws of the State of Michigan, with its principal place of business located in Lansing, Michigan. Jackson did not originate or administer the

5

subject life insurance policy, Policy Number 1009208 (the "Policy"), but inherited the Policy and the Policy records from its predecessors.

3.  The Simon Bernstein Irrevocable Insurance Trust Dtd 6/21/95 (the "Bernstein Trust") is alleged in the underlying suit to be a "common law trust established in Chicago, Illinois by the settlor, Simon L. Bernstein, and was formed pursuant to the laws of the state of Illinois."

4.  Ted S. Bernstein is a resident and citizen of Florida. He is alleged in the underlying suit to be the "trustee" of the Bernstein Trust. Ted Bernstein is further, individually, upon information and belief, a beneficiary of the Bernstein Trust (as Simon Bernstein's son).

5.  Eliot Bernstein is a resident and citizen of Florida. He has asserted that he and/or his children are potential beneficiaries under the Policy as Simon Bernstein's son, presumably under the Bernstein Trust.

6.  First Arlington National Bank is, upon information and belief, a bank in Illinois that was, at one point, and the purported trustee for the "S.B. Lexington, Inc. Employee Death Benefit Trust" (the "Lexington Trust"). The Lexington Trust was, upon information and belief, created to provide employee benefits to certain employees of S.B. Lexington, Inc., an insurance agency, including Simon Bernstein, but it is unclear if such trust was properly established.

7.  United Bank of Illinois is, upon information and belief, a bank in Illinois that was, at one point, a named beneficiary of the Policy. To date, Jackson has not determined the current existence of this bank.

8.  Bank of America, N.A., is a national banking association with its principal place of business in Charlotte, North Carolina. Bank of America, N.A. is the successor in interest to LaSalle National Trust, N.A., which was a named beneficiary of the Policy.

9. The "Simon Bernstein Trust" is, upon information and belief, the Bernstein Trust listed in paragraph 3, above, and was a named contingent beneficiary of the Policy. However, based on the variance in title, to the extent it is a separate trust from the Bernstein Trust referenced above, it is named separately.

10. Subject matter jurisdiction is proper in accordance with 28 U.S.C. § 1335(a).

11. Personal jurisdiction is proper over Ted Bernstein because he, purportedly as Trustee of the Bernstein Trust, caused this underlying suit to be filed in this venue.

12. Personal jurisdiction is proper over First Arlington National Bank, United Bank of Illinois, and Bank of America in accordance with 735 ILCS 5/2-209(a)(1) because each, upon information and belief, transacts business in Illinois.

13. Personal jurisdiction is proper over Ted and Eliot Bernstein in accordance with 735 ILCS 5/2-209(a)(13) as each are believed to have an ownership interest in the Bernstein Trust, which is alleged in the underlying complaint to exist underneath laws of and to be administered within this State.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) in that a substantial part of the events giving rise to this interpleader action occurred in this District.

## FACTS

15. On December 27, 1982, upon information and belief, Capitol Bankers Life Insurance Company issued the Policy, with Simon L. Bernstein as the purported insured (the "Insured").

16. Over the years, the Policy's owner(s), beneficiary(ies), contingent beneficiary(ies) and issuer changed. Among the parties listed as Policy beneficiaries (either primary or contingent) include: "Simon Bernstein"; "First Arlington National Bank, as Trustee of S.B. Lexington, Inc. Employee Death Benefit Trust"; "United Bank of Illinois"; "LaSalle National

Trust, N.A., Trustee"; "LaSalle National Trust, N.A."; "Simon Bernstein Insurance Trust dated 6/21/1995, Trust"; and "Simon Bernstein Trust, N.A."

17. At the time of the Insured's death, it appears "LaSalle National Trust, N.A." was the named primary beneficiary of the Policy, and the "Simon Bernstein Trust, N.A." was the contingent beneficiary of the Policy. The Policy's Death Benefit Proceeds are $1,689,070.00, less an outstanding loan.

18. Subsequent to the Insured's death, Ted Bernstein, through his Florida counsel (who later claimed Bernstein did not have authority to file the instant suit in Illinois on behalf of the Bernstein Trust and withdrew representation), submitted a claim to Heritage seeking payment of the Death Benefit Proceeds, purportedly as the trustee of the Bernstein Trust. Ted Bernstein claimed that the Lexington Trust was voluntarily dissolved in 1998, leaving the Bernstein Trust as the purported sole surviving Policy beneficiary at the time of the Decedent's death.

19. However, Ted Bernstein could not locate (nor could anyone else) a copy of the Bernstein Trust. Accordingly, on January 8, 2013, Reassure, successor to Heritage, responded to Ted Bernstein's counsel stating:

> In as much as the above policy provides a large death benefit in excess of $1.6 million dollars and the fact that the trust document cannot be located, we respectfully request a court order to enable us to process this claim.

20. Presently, the Bernstein Trust still has not been located. Accordingly, Jackson is not aware whether the Bernstein Trust even exists, and if it does whether its title is the "Simon Bernstein Insurance Trust dated 6/21/1995, Trust," as captioned herein, or the "Simon Bernstein Trust, N.A.", as listed as the Policy's contingent beneficiary (or otherwise), and/or if Ted Bernstein is in fact its trustee. In conjunction, Jackson has received conflicting claims as to whether Ted Bernstein had authority to file the instant suit on behalf of the Bernstein Trust.

21. In addition, it is not known whether "LaSalle National Trust, N.A." was intended to be named as the primary beneficiary in the role of a trustee (of the Lexington and/or Bernstein Trust), or otherwise. Jackson also has no evidence of the exact status of the Lexington Trust, which was allegedly dissolved.

22. Further, Jackson has received correspondence from Eliot Bernstein, attached as *Exhibit 1*, asserting that he and/or his children are potential beneficiaries under the Policy, (presumably under the Bernstein Trust, but nonetheless raising further questions as to the proper beneficiaries of the Policy), and requesting that no distributions of the Death Benefit Proceeds be made.

## COUNT I- INTERPLEADER

23. This is an action of interpleader brought under Title 28 of the United States Code, Section 1335.

24. Jackson does not dispute the existence of the Policy or its obligation to pay the contractually required payment Death Benefit Proceeds under the Policy, which it has tendered into the registry of this Court.

25. Due to: (a) the inability of any party to locate the Bernstein Trust and uncertainty associated thereunder; (b) the uncertainty surrounding the existence and status of "LaSalle National Trust, N.A." (the primary beneficiary under the Policy) and the Lexington Trust; and (c) the potential conflicting claims under the Policy, Jackson is presently unable to discharge its admitted liability under the Policy.

26. Jackson is indifferent among the defendant parties, and has no interest in the benefits payable under the Policy as asserted in this interpleader other than to pay its admitted liability pursuant to the terms of the Policy, which Jackson has been unable to do by reason of uncertainty and potential competing claims.

27. Justice and equity dictate that Jackson should not be subject to disputes between the defendant parties and competing claims when it has received a non-substantiated claim for entitlement to the Death Benefit Proceeds by a trust that has yet to be located, nor a copy of which produced.

WHEREFORE, counter- and third-party plaintiff Jackson National Life Insurance Company respectfully requests pursuant to 28 U.S.C. 1335 that this Court enter an Order:

a. That counter-defendants be temporarily enjoined during the pendency of this suit and thereafter permanently and perpetually enjoined from commencing any proceedings or prosecuting any claim against Jackson in any state or federal court or other forum with respect to the Policy;

b. That judgment be entered in favor of Jackson on the Complaint in Interpleader;

c. That upon determination that the proper parties have been made subject to this suit, Jackson be excused from further attendance upon this case, be dismissed from this case with an express finding of finality pursuant to Rule 54(b) of the Federal Rules of Civil Procedure;

d. That Jackson be awarded actual court costs and reasonable attorneys' fees incurred in connection with this interpleader action to be paid out of the admitted liability deposited by it with the Clerk of the Court; and

e. That Jackson be granted such other and further relief as this Court deems just and appropriate.

**JACKSON NATIONAL LIFE INSURANCE COMPANY,**
By: /s/ Alexander D. Marks
One of Its Attorneys

Frederic A. Mendelsohn (ARDC No. 6193281)
Alexander D. Marks (ARDC No. 6283455)
Burke, Warren, MacKay & Serritella, P.C.
330 N. Wabash Ave., 22nd Floor
Chicago, Illinois 60611
312-840-7000
312-840-7900 (facsimile)

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, states that on June 26, 2013 he caused a copy of the foregoing Answer to Complaint and Counter-Claim and Third-Party Complaint for Interpleader to be filed electronically with the Northern District of Illinois electronic filing system, and electronically served upon the following:

Adam M. Simon
The Simon Law Firm
303 E. Wacker Drive, Suite 210
Chicago, IL 60601

/s/ Alexander D. Marks

1434759.1