# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| Simon Bernstein Irrevocable Insurance Trust Dtd 6/21/95, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> Heritage Union Life Insurance Co., <br><br> Defendant. | Case No. 13 C 3643 <br><br> Judge John Robert Blakey |

## ORDER

This is an interpleader action concerning the distribution of the proceeds from a life insurance policy that insured the life of Simon Bernstein. The Heritage Union Life Insurance Company interpleaded the funds at issue, and was subsequently dismissed from the case. The principal parties remaining in the case are: (1) Plaintiff Simon Bernstein Irrevocable Insurance Trust Dated 6/21/95 (the "Trust"); (2) the four Bernstein sibling Plaintiffs, who believe the proceeds of the policy should be distributed to the Trust (Ted Bernstein, Lisa Friedstein, Jill Iantoni and Pam Simon); (3) the fifth Bernstein sibling, Eliot Bernstein, a third party Plaintiff who disputes that approach; and (4) the intervenor estate of Simon Bernstein, as represented by Brian O'Connell.

Plaintiffs (the Trust and the four Bernstein siblings) assert three causes of action: (1) breach of contract against the Heritage Union Life Insurance Company; (2) a request for a declaratory judgment that the Trust is entitled to the proceeds of Simon Bernstein's life insurance policy; and (3) in the alternative, a request for a finding of a resulting trust.

Currently before the Court is Plaintiffs' motion for summary judgment with regard to Counts I and II of their Complaint. [148], [153]. As explained below, that motion is denied.

### Legal Standard

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir.

1

2014). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Further, summary judgment is not appropriate "if the evidence is such that a reasonable jury could return a verdict for the non-moving party," and the Court must "construe all facts and reasonable inferences in the light most favorable to the nonmoving party." *Liberty Lobby*, 477 U.S. at 255; *see also Carter v. City of Milwaukee*, 743 F.3d 540, 543 (7th Cir. 2014).

Plaintiffs propose a different legal standard, arguing that in an "interpleader action each claimant has the burden of establishing its entitlement to the Stake, and it is insufficient to negate or rely on the weakness of the claims of others." [153] at 8 (citing *Eskridge v. Farmers New World Life Ins. Co.*, 250 Ill.App.3d 603, 608-609 (Ill. App. Ct. 1983)). According to Plaintiffs, because Eliot and the Estate have failed to establish their entitlement to the proceeds, the Plaintiffs' motion for summary judgment should be granted. They argue that since "they lacked viable claims of their own, both Eliot and the Estate sought simply to poke a few holes in Movants' case which is insufficient to prevail in an Interpleader Action." [200] at 13. This misunderstands the applicable standard at summary judgment. Even though this may be an interpleader action, the normal standards apply to motions for summary judgment. *See Protective Life Ins. Co. v. Hansen*, 632 F.3d 388, 392 (7th Cir. 2011); *Abstract & Title Guar. Co. v. Chicago Ins. Co.*, 489 F.3d 808, 810 (7th Cir. 2007). The Court will proceed accordingly.

## Count I

Plaintiffs' motion for summary judgment on Count I is denied. Count I alleges a breach of contract against Heritage Union Life Insurance Company. However, Heritage Union is no longer a party to this matter. On February 18, 2014, the Court entered an order stating: "Heritage Union Life Insurance Company is hereby dismissed as a party from this action, including dismissal of all claims against it, with prejudice. Heritage Union Life Insurance Company is discharged of all liability under the Policy." [101]. Because Heritage Union was dismissed from this matter, and Count I against Heritage Union was also dismissed, Plaintiffs' motion for summary judgment on Count I is denied.

## Count II

Plaintiffs' motion for summary judgment on Count II is denied. To prevail on their motion, Plaintiffs must show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014). Count II requests a declaratory judgment that: (1) the Trust was established on or about June 21, 1995; (2) the beneficiaries of the Trust are the five children of Simon Bernstein; (3) Ted Bernstein is the Trustee of the Trust; and (4) the Trust is entitled to the proceeds from Simon Bernstein's life insurance policy. Unfortunately, Plaintiffs have been

unable to produce the executed Trust, and the Intervenor and Third Party Plaintiff dispute its existence. The parties also dispute the terms of any trust. If the Trust was established as claimed by Plaintiffs, they would be entitled to summary judgment here.

Because they have been unable to produce the executed Trust, Plaintiffs rely on extrinsic evidence to prove that the Trust existed as they claim. "However, one seeking to establish an express trust by parol evidence bears the burden of proving the trust by clear and convincing evidence. The acts or words relied upon must be so unequivocal and unmistakable as to lead to only one conclusion." *Eychaner v. Gross*, 779 N.E.2d 1115, 1135 (Ill. 2002). If such evidence is "doubtful or capable of reasonable explanation upon any other theory, it is not sufficient to establish an express trust." *Id*.

Here, there is a genuine dispute of fact concerning the existence of the Trust and its terms. To establish the existence of the Trust, Plaintiffs rely primarily on testimony from Ted Bernstein and David Simon. According to that testimony, Simon Bernstein executed the trust documents as set out in Plaintiffs' Exhibits 15 and 16. However, the testimony of David Simon and Ted Bernstein, along with the testimony of the other Plaintiffs, is barred by the Illinois Dead Man's Act to the extent it relates to conversations with the deceased or to any events which took place in the presence of the deceased. *See* 735 ILCS 5/8-201.[1] This dramatically limits the testimony upon which Plaintiffs may rely in support of their motion, and leaves the Court without any direct testimony describing the Trust's creation.

In addition to testimony, Plaintiffs rely on a series of documents purporting to show that the Trust was created. As mentioned above, Plaintiffs offer Exhibits 15 and 16 as unexecuted versions of the Trust. Yet those documents offer Plaintiffs little support in the absence of the testimony from David Simon and Ted Bernstein describing how some form of those exhibits was executed by Simon Bernstein. In addition to Exhibits 15 and 16, Plaintiffs offer the following:

- Ex. 19 – A 6/21/95 IRS Form SS-4 "Application for Employer Identification Number" on behalf of the "Simon Bernstein Irrevocable Insurance Trust." The Form SS-4 purports to be signed by Shirley Bernstein, Simon's wife. It is unclear from the face of the document whether it was submitted to or approved by the IRS.

---

[1] There is an exception to the Dead Man's Act that reads: "If any person testifies on behalf of the representative to any conversation with the deceased . . . or to any event which took place in the presence of the deceased . . . any adverse party or interested person, if otherwise competent, may testify concerning the same conversation or event." This exception does not apply to the testimony cited by the Intervenor here because that testimony was given by Ted Bernstein and David Simon *on behalf of the Plaintiffs*. It was not given on behalf of the estate's representative. The Intervenor merely cited to Plaintiffs' evidence as a way of showing that the resolution of this matter would involve credibility determinations with regard to Plaintiffs' witnesses.

- Ex. 18 – An 8/8/95 "Request for Service" asking to transfer the ownership of Simon Bernstein's life insurance policy to the "Simon Bernstein Irrevocable Insurance Trust dtd 6/21/1995." This document refers to "ownership" of the policy, and does not affect the policy's beneficiaries.

- Exhibit 4 – An "Employee Death Benefit Plan and Trust . . . Beneficiary Designation" in which Simon Bernstein designated the "Simon Bernstein Irrevocable Insurance Trust" as the beneficiary to receive his death benefits. Note that this document does not refer to the Trust at issue here, the "Simon Bernstein Irrevocable Insurance Trust dated 6/21/95." It is unclear from the record if that was an oversight, or was intentionally done to refer to a distinct trust. This document is dated 8/26/1995.

- Exhibit 8 – An 11/7/95 "Request Letter" asking to change the successor beneficiary of Simon Bernstein's life insurance policy to the "Simon Bernstein Irrevocable Insurance Trust Dated June 21, 1995." This document includes a response from the insurance company stating that the "Simon Bernstein Ins. Trust" had been named a contingent beneficiary.

- Exhibit 36 – A 4/23/2010 letter from Heritage Union Life Insurance to Simon Bernstein that lists the contingent beneficiary of Simon Bernstein's life insurance policy as "Simon Bernstein Trust, N.A." However, the insurance company's representative explained that no one had ever submitted a change of beneficiary request designating "Simon Bernstein Trust, N.A." as a beneficiary of the policy. That representative explained, without apparent firsthand knowledge, that he thought that the "Simon Bernstein Trust, N.A." name was used by mistake by an employee of the insurance company. Don Sanders Aff. at ¶¶ 69-71.

While the above sources do provide some evidence that the Trust was created, as Plaintiffs contend, that evidence is far from dispositive of the issue. In fact, the Intervenor has presented argument and evidence casting material doubt on whether: (1) the Trust was actually created; and (2) the terms of the Trust are as explained by Plaintiffs. The Intervenor argues as follows:

- The results and timing of the Plaintiffs search for the Trust raise doubts about their version of events. Plaintiffs claim that David Simon found both a hard copy and an electronic version of the Trust in his office. David Simon has offered testimony here that he aided Simon Bernstein in creating the Trust, and then kept both versions of the unexecuted Trust. However, David Simon's search for the Trust documents occurred approximately a year after Simon Bernstein had died. Almost a year

4

earlier, immediately after Simon Bernstein's death, the family had conducted an "exhaustive search" for the Trust, and none was found. Between the two searches, the Bernstein siblings and their former attorney exchanged many emails addressing how best to obtain the insurance proceeds. Intervenor's Ex. A, Dep. Exs. 1-5, 8-18. Many of the emails reference the inability to locate the Trust document. *Id.* David Simon was a participant in those emails, but he did not relate a recollection of the critical facts from his affidavit regarding his memory of Simon Bernstein executing the Trust. Nor did those emails cause David Simon to search his own office for the missing documents. That search did not occur until after David Simon's brother (Adam Simon) and his firm were retained as counsel in this matter.

- In the course of their attempts to obtain the policy proceeds, the Bernstein siblings discussed using a different trust that had been established by Simon Bernstein – the "2000 Trust." Intervenor's Ex. A at 37:4-18; 48:21-49:19; Dep. Ex. 1. That option was rejected because Pam Simon was not included as a beneficiary of that trust. *Id.* The 2000 Trust is important, however, in that it identifies the proceeds of the policy at issue here as an asset of that trust. Intervenor's Ex. A, Dep. Ex. 23 at Schedule A. The 2000 Trust does not refer to an alleged 1995 trust, which the 2000 trust would have superseded.

- The original complaint in this matter does not refer to a written trust. Despite David Simon's statement that he recalls having created the trust on his own computer and having seen it after execution, the original Complaint in this matter makes no reference to the execution of a written trust. Instead, it refers only to the existence of a "common law trust." [1]. It makes no mention of the trust documents from Exhibits 15 and 16.

- Plaintiffs have offered testimony that, when Simon Bernstein took his trust to be executed at his law firm (then Hopkins & Sutter), the firm changed the identity of the successor trustee. This implies that the firm would have had an electronic version of the Trust, and possibly a hard copy. David Simon testified that the firm was contacted to see if it had a copy of the executed trust and did not; but David Simon could not recall who contacted the firm, which attorneys were contacted, or if he himself reached out to the firm at all. Intervenor's Ex. B at 44:12-45:15; 46:22-47:15.

- David Simon also testified that when Simon Bernstein returned from executing the Trust he helped Mr. Bernstein prepare documents to be submitted to the insurance company in order to give effect to the Trust. He also testified that he would have expected the insurance company to

5

retain copies. David Simon does not remember any details about who contacted the insurance company. But it is clear that the company retained no copies of documents relevant to the Trust. Intervenor's Ex. B at 43:10-44:2.

- The purported trust documents, Exhibit 15 and 16, contain inconsistencies as to who would serve as the trustee. Exhibit 16 lists the potential trustees as "Shirley," "David," and an illegible name. It then lists the successor trustees as "Pam, Ted." Exhibit 15 lists Shirley as the trustee, and David B. Simon as the successor trustee. However, when the Trust first made a claim to the insurance company, it represented that an attorney by the name of Spallina was the trustee. Intervenor's Ex. B at 59:13-60:3; 81:15-83:12. Despite all of this, in the current proceeding the Plaintiffs claim that Ted Bernstein is the trustee.

Based on the evidence in the record, and "construing all facts and reasonable inferences in the light most favorable to the nonmoving party," the Court finds that there are genuine issues of material fact as to whether the Trust was executed and, if so, upon what terms. There remains a triable issue of fact such that a "reasonable jury could return a verdict for the non-moving party," *Liberty Lobby*, 477 U.S. at 255, and therefore summary judgment is inappropriate. Plaintiffs' motion is denied with regard to Count II.

IT IS SO ORDERED

Dated: March 15, 2016

                                                  Judge John Robert Blakey
                                                  United States District Court