# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

SIMON BERNSTEIN IRREVOCABLE
INSURANCE TRUST DTD 6/21/95, *et al.*,

       Plaintiffs,

       v.

HERITAGE UNION LIFE INSURANCE
CO.,

       Defendant.

Case No. 1:13-cv-3643

Judge John Robert Blakey

---

HERITAGE UNION LIFE INSURANCE
COMPANY,

       Counter-Plaintiff,

       v.

SIMON BERNSTEIN IRREVOCABLE
INSURANCE TRUST DTD 6/21/95,

       Counter-Defendant,

and

FIRST ARLINGTON NATIONAL BANK,
*et al.*,

       Third-Party Defendants.

---

ELIOT IVAN BERNSTEIN,

       Cross-Plaintiff,

       v.

TED BERNSTEIN, *et al.*,

Cross-Defendants,

and

PAMELA B. SIMON, *et al.*,

Third-Party Defendants.

## **MEMORANDUM OPINION AND ORDER**

This action concerns the distribution of proceeds from a life insurance policy (the "Policy Proceeds") previously held by decedent Simon Bernstein. The principal parties remaining in the case are: (1) Plaintiff Simon Bernstein Irrevocable Insurance Trust Dated 6/21/95 (the "1995 Trust"); (2) the four Bernstein siblings who believe the Policy Proceeds should be distributed to the 1995 Trust (Ted Bernstein, Lisa Friedstein, Jill Iantoni and Pam Simon; collectively, the "Agreed Siblings"); (3) the fifth Bernstein sibling, Eliot Bernstein, a *pro se* third-party Plaintiff who disputes that approach ("Eliot"); and (4) the intervenor estate of Simon Bernstein (the "Estate"), which contends that the 1995 Trust was never actually created, such that the Policy Proceeds should default to the Estate.

Before the Court are two motions for summary judgment. In the first, [239] at 1-4, the 1995 Trust and the Agreed Siblings seek judgment on Eliot's third-party claims. In the second, [245] at 1-6, the Estate seeks judgment against the 1995 Trust and the Agreed Siblings on their claims in the Second Amended Complaint, [73], and entry of judgment in the Estate's favor on its Complaint for Declaratory Judgment. [112] at 1-17. For the reasons explained below, the former is granted while the latter is denied.

# I. Background[1]

## A. Procedural Posture

Following Simon Bernstein's death on September 13, 2012, the 1995 Trust submitted a death claim to Heritage pursuant to Simon Bernstein's life insurance policy. [150] at 15; [240] at 13. After Heritage failed to pay, the 1995 Trust initiated this lawsuit in the Circuit Court of Cook County, alleging that Heritage had breached its contractual obligations. [1-1] at 1-3. On May 20, 2013, Jackson National Life Insurance Company ("Jackson"), as successor in interest to Heritage, removed the case to this Court. [1] at 1-2.

On June 26, 2013, Heritage, through Jackson, filed a Third-Party Complaint and Counter-Claim for Interpleader pursuant to 28 U.S.C. § 1335(a) and Federal Rule of Civil Procedure 14, seeking a declaration of rights under the life insurance policy. [17] at 1-10. Heritage was eventually dismissed in February of 2014 after interpleading the Policy Proceeds. [101] at 2.

On September 22, 2013, Eliot, a third-party Defendant to Jackson's interpleader claim, filed a 177-page Answer, Cross-Claim and Counter-Claim. [35] at 1-117. Eliot brought claims against the 1995 Trust, the Agreed Siblings, and

---

[1] The facts are taken from the parties' Local Rule 56.1 statements and the Court's previous rulings [106, 220]. [240] refers to Plaintiffs' statement of material facts. [247] refers to the Estate's statement of material facts. [255], which incorporates [150] by reference, refers to Plaintiffs' statement of additional facts. [257] refers to both Eliot's responses to Plaintiffs' statement of material facts and Eliot's statement of additional material facts. [260] refers to Eliot's responses to the Estate's statement of material facts. [266] refers to the Estate's responses to Plaintiffs' statement of additional facts.

The Estate correctly notes that [255] deviates in certain respects from the procedure enumerated in Local Rule 56.1. Given this lawsuit's convoluted history, and in the interests of justice and judicial economy, the Court nevertheless elects to consider [255] and [150] in support of Plaintiffs' opposition to the Estate's motion for summary judgment.

multiple third-party Defendants (including the law firm of Tescher & Spallina, P.A., The Simon Law Firm, Donald Tescher, Robert Spallina, David Simon, Adam Simon, S.B. Lexington, Inc., S.B. Lexington, Inc. Employee Death Benefit Trust, and S.T.P. Enterprises, Inc.). *Id.*

On January 13, 2014, the Agreed Siblings and the 1995 Trust filed their First Amended Complaint. [73] at 1-11. Plaintiffs alleged that: (1) the 1995 Trust was a common law trust established in Chicago by Simon Bernstein; (2) Ted Bernstein is the trustee of the 1995 Trust; and (3) the 1995 Trust was the beneficiary of Simon Bernstein's life insurance policy. *Id.* In addition, Plaintiffs alleged that all of Simon Bernstein's children, *including Eliot*, are equal beneficiaries to the Trust. *Id.*

On March 3, 2014, the Court dismissed Eliot's claims against Tescher & Spallina, P.A., Donald Tescher, and Robert Spallina. [106] at 1-4. The Court explained that Eliot, as a third-party Defendant to an interpleader claim, was "not facing any liability" in this action, and he was accordingly not authorized to seek relief against other third parties. *Id.*

On June 5, 2014, the Estate filed its Complaint for Declaratory Judgment, [112] at 1-16, and on July 28, 2014, the Court granted the Estate's motion to intervene. [121] at 3-4.

Fact discovery closed on January 9, 2015, [123], and on March 15, 2016 the Court denied Plaintiffs' motion for summary judgment. [220] at 1-6. The Court found, *inter alia,* that while Plaintiffs were able to adduce "some evidence that the [1995] Trust was created," this evidence was "far from dispositive." *Id.* at 4.

## B.     Probate Actions

The Probate Division of the Palm Beach County Circuit Court recently resolved two other cases related to the disposition of Simon Bernstein's assets: *In re Estate of Simon L. Bernstein*, No. 502012CP004391XXXXNBIH (Fla. Cir. Ct.) and *Ted Bernstein, as Trustee of the Shirley Bernstein Trust Agreement dtd 5/20/2008 v. Alexandra Bernstein, et al.,* No. 502014CP003698XXXXNBIJ (Fla. Cir. Ct.) (collectively, the "Probate Actions").

Judge John L. Phillips presided over a joint trial of the Probate Actions in December of 2015.  A full recitation of Judge Phillips' findings is unnecessary here, but relevant portions of his finals orders include:

- The testamentary document identified as the "Will of Simon Bernstein" was "genuine and authentic," and "valid and enforceable according to [its] terms."

- Ted Bernstein "was not involved in the preparation or creation of" the Will of Simon Bernstein, "played no role in any questioned activities of the law firm of Tescher & Spallina, P.A.," there was "no evidence to support the assertions of Eliot Bernstein that Ted Bernstein forged or fabricated" the Will of Simon Bernstein, and, in fact, "Ted Bernstein played no role in the preparation of any improper documents, the presentation of any improper documents to the Court, or any other improper act, contrary to the allegations of Eliot Bernstein."

- The beneficiaries of the testamentary trust identified in the Will of Simon Bernstein are "Simon Bernstein's then living grandchildren," while "Simon's children – including Eliot Bernstein – are not beneficiaries."

- Eliot "should not be permitted to continue representing the interests of his minor children, because his actions have been adverse and destructive to his children's interest," such that it became necessary to appoint a *guardian ad litem*.

[240-11] at 2-5; [240-12] at 2-3.

## II.    Legal Standard

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.,* 739 F.3d 1055, 1060 (7th Cir. 2014). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). In determining whether a genuine issue of material fact exists, this Court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *See CTL ex rel. Trebatoski v. Ashland Sch. Dist.,* 743 F.3d 524, 528 (7th Cir. 2014).

## III.    Analysis

### A.    Motion for Summary Judgment on Eliot's Claims

Eliot currently has seven claims pending against the 1995 Trust, the Agreed Siblings, David Simon, Adam Simon, The Simon Law Firm, S.B. Lexington, Inc., S.B. Lexington, Inc. Employee Death Benefit Trust, and S.T.P. Enterprises, Inc.[2]

---

[2]     As Judge St. Eve (the District Judge originally assigned to this case) previously explained before dismissing third-party Defendants Tescher & Spallina, P.A., Donald Tescher, and Robert Spallina: "Eliot is not an original Defendant to Plaintiffs' First Amended Complaint . . . . Instead, Eliot is a Third-Party Defendant in Jackson's interpleader action [such that] he is not facing any liability in this lawsuit . . . . Rule 14(a) does not authorize Eliot to seek any such relief in the present lawsuit because Eliot is not facing any liability in the first instance." [106] at 3-4. This reasoning applies with equal force to the remaining third-party Defendants. The Federal Rules of Civil Procedure permit a defendant to "serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). Here, Eliot is not facing any liability, and his claims against the remaining third-party Defendants are procedurally

[35] at 61-117. Eliot's causes of action sound in fraud, negligence, breach of fiduciary duty, conversion, abuse of legal process, legal malpractice, and civil conspiracy.[3]

### 1. Fraud, Negligence, Breach of Fiduciary Duty & Legal Malpractice

Plaintiffs argue that Eliot's claims for fraud, negligence, breach of fiduciary duty, and legal malpractice fail because Eliot "cannot show that he sustained damages or that he has standing to assert damages on behalf of his children or the Estate." [241] at 14; *see also Damato v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 878 F. Supp. 1156, 1162 (N.D. Ill. 1995) (damages are a requisite element of a claim for fraud); *Elliot v. Chicago Hous. Auth.*, No. 98-cv-6307, 1999 WL 519200, at *9 (N.D. Ill. July 14, 1999) (damages are a requisite element of a claim for negligence); *Pearson v. Garrett-Evangelical Theological Seminary, Inc.*, 790 F. Supp. 2d 759, 768 (N.D. Ill. 2011) (damages are a requisite element of a claim for breach of fiduciary duty); *Snyder v. Heidelberger*, 953 N.E.2d 415, 424 (Ill. 2011) (damages are a requisite element of a claim for legal malpractice).

First, Eliot cannot sustain cognizable damages related to the disposition of the Estate or the testamentary trust in light of the Probate Court's rulings. The

---

defective. Because all of Eliot's claims also fail as a substantive matter, however, they are dismissed on that basis, as discussed *infra*.

[3] The Court construes Eliot's arguments on each claim liberally, in light of his *pro se* status. *See Johnson v. Cook Cty. Jail*, No. 14-cv-0007, 2015 WL 2149468, at *2 (N.D. Ill. May 6, 2015) ("Motions for summary judgment involving *pro se* litigants are construed liberally for the benefit of the unrepresented party, so as to ensure that otherwise understandable filings are not disregarded if the *pro se* litigant stumbles on a technicality. That said, pro se litigants are not entitled to a general dispensation from the rules of procedure.") (internal quotations omitted).

Probate Court found, *inter alia*, that Simon Bernstein's "children – including Eliot – are not beneficiaries" of the Will of Simon Bernstein or the related testamentary trust. [240] at 11. Instead, Simon Bernstein's grandchildren (including Eliot's children) are the testamentary trust's beneficiaries. *Id.* Eliot also has no interest in the disposition of the testamentary trust vis-à-vis his own children, as the Probate Court was forced to appoint a *guardian ad litem* in light of Eliot's "adverse and destructive" actions relative "to his children's interest." *Id.* These findings have preclusive effect in this case,[4] such that Eliot cannot demonstrate cognizable damages relative to the disposition of the Estate or the testamentary trust.

Second, Eliot cannot identify cognizable damages relating to the disposition of the Policy Proceeds, as Plaintiffs have consistently argued that Eliot is entitled to

---

[4]     All four elements of collateral estoppel are present in this case. *See Westport Ins. Corp. v. City of Waukegan*, 157 F. Supp. 3d 769, 778 (N.D. Ill. 2016) ("Collateral estoppel applies if the following four elements are met: (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been actually litigated; (3) the determination of the issue must have been essential to the final judgment; and (4) the party against whom estoppel is invoked must be fully represented in the prior action.") (internal quotation omitted). Here, the "issue sought to be precluded" is Eliot's lack of a cognizable interest in the Estate and the testamentary trust, precisely "the same as that involved" in the Probate Court. This issue was "actually litigated," as the Probate Court held a full trial on this issue, and resolution of this question formed the crux of the Probate Court's final judgments. Finally, Eliot, the party against whom estoppel is invoked, was "fully represented," as he had a full and fair opportunity to litigate this question at trial. *See Murray v. Nationwide Better Health*, No. 10-cv-3262, 2014 WL 53255, at *4 (C.D. Ill. Jan. 7, 2014) (The "overarching concern when applying issue preclusion is that the party against whom the prior action is invoked must have had a full and fair opportunity to litigate the issue.").

    Eliot argues that the application of collateral estoppel is inappropriate, given that he was proceeding *pro se* in the Probate Court and the Probate Court's orders were appealed. Neither of these concerns have merit. *See DeGuelle v. Camilli*, 724 F.3d 933, 938 (7th Cir. 2013) (The "idea that litigating *pro se* should insulate a litigant from application of the collateral estoppel doctrine, or, more broadly, the doctrine of res judicata, of which collateral estoppel is an aspect, is absurd."); *Robinson v. Stanley*, No. 06-cv-5158, 2011 WL 3876903, at *5 (N.D. Ill. Aug. 31, 2011), *aff'd*, 474 F. App'x 456 (7th Cir. 2012) (The Seven Circuit "has adhered to the general rule in American jurisprudence that a final judgment of a court of first instance can be given collateral estoppel effect even while an appeal is pending.") (internal quotation omitted).

an equal share of the same. [265] at 3 (asserting a claim to the Policy Proceeds "on behalf of all five siblings, *including* Eliot") (emphasis in original).

In his response opposing summary judgment, Eliot fails to articulate a coherent response to Plaintiffs' argument. *See generally* [261]. Indeed, Eliot does not identify any material in the record to support his vague and conclusory damages allegations. Eliot has simply recycled his previous arguments, and cited only his pleadings in support of the same. *See, e.g.,* [261] at 3 ("Moreover, the Counterclaims have express language seeking claims to the proceeds and damages from the wrongful conduct . . . See ECF No. 35.").

Eliot's exclusive reliance on his pleadings rather than evidence, at this point in the proceedings, is both: (1) inconsistent with Federal Rule of Civil Procedure 56, this district's local rules, and this Court's standing orders; and (2) insufficient to defeat a motion for summary judgment. *See Essex Crane Rental Corp. v. C.J. Mahan Const. Co.*, No. 07-cv-439, 2008 WL 3978345, at *10 (N.D. Ill. Aug. 25, 2008) ("Unlike a motion to dismiss, summary judgment is the put up or shut up moment in a lawsuit, and the nonmovant must do more than merely rest on its pleadings.") (internal quotation omitted).

Plaintiffs have cited ample evidence in the record to support their argument that Eliot's claims for fraud, negligence, breach of fiduciary duty, and legal malpractice must fail, as Eliot cannot adduce any evidence of the requisite damages. Eliot's opposition fails to formulate a cogent response, much less cite any

countervailing evidence in the record. Plaintiffs' motion for summary judgment is accordingly granted with respect to these four claims.

### 2.    Conversion

The elements of conversion under Illinois law are: "(1) the unauthorized and wrongful assumption of control or ownership by one person over the personalty of another; (2) the other person's right in the property; (3) the right to immediate possession of the property; and (4) a demand for possession." *Jordan v. Dominick's Finer Foods*, 115 F. Supp. 3d 950, 956 (N.D. Ill. 2015).

Plaintiffs argue that Eliot's claim for conversion fails, because Eliot cannot identify "a specific asset or piece of property that was converted" or "show an unfettered right of ownership to such property." [241] at 15. This argument similarly turns on Eliot's lack of legal interest in the Estate or testamentary trust, and the Plaintiffs' acknowledgement that Eliot, under their theory, is entitled to an equal share of the Policy Proceeds. *Id.*

Here again, Eliot has failed to formulate an intelligible response. His brief does not even mention his conversion claim. *See generally* [261]. Eliot makes no effort to either identify any purportedly converted property or cite material in the record in support of his conversion claim.   *See id.*   In light of the foregoing, Plaintiffs' motion for summary judgment is also granted with respect to Eliot's conversion claim.

### 3.      Abuse of Process

Under Illinois law, abuse of process "is the misuse of legal process to accomplish some purpose outside the scope of the process itself." *Neurosurgery & Spine Surgery, S.C. v. Goldman*, 790 N.E.2d 925, 929 (Ill. App. Ct. 2003).  The "two distinct elements of an abuse of process claim are: (1) the existence of an ulterior purpose or motive; and (2) some act in the use of process that is not proper in the regular course of proceedings."  *Id.* at 930.  The "tort of abuse of process is not favored under Illinois law," and its "elements must be strictly construed."  *Id.*

Plaintiffs argue that Eliot cannot satisfy either element of his abuse of process claim.  More specifically, they claim that the Probate Actions were simply "filed by the named beneficiary of a life insurance policy to pursue a death claim against a life insurer for the Policy Proceeds," and that no "act in the use of" that process was improper.  [241] at 13.

Eliot's response does not specifically address his claim for abuse of process; indeed, the phrase "abuse of process" does not appear in his briefing.  *See generally* [261].  Instead, Eliot asserts, without citation to the record, that Plaintiffs have "repeatedly taken action to barrage and occupy" him in one case in order "to improperly gain advantage" in the other.  *Id.* at 6.  These allegations, in addition to having no evidentiary basis in the record, are insufficient under Illinois law. *Goldman*, 790 N.E.2d at 930 ("abuse of process is a very narrow tort" typically "found only in cases in which a plaintiff has suffered an actual arrest or seizure of

property"). Plaintiffs are entitled to summary judgment on Eliot's abuse of process claim.

### 4. Civil Conspiracy

Under Illinois law, the elements for a civil conspiracy are: (1) a combination of two or more persons; (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means; and (3) in the furtherance of the same, one of the conspirators committed an overt tortious or unlawful act. *See Fritz v. Johnston,* 807 N.E.2d 461, 470 (Ill. 2004). As "the third element of this test indicates, however, civil conspiracy is not an independent tort: if a plaintiff fails to state an independent cause of action underlying his conspiracy allegations, the claim for conspiracy also fails." *Jones v. City of Chicago*, No. 08-cv-3501, 2011 WL 1898243, at *6 (N.D. Ill. May 18, 2011) (internal quotation omitted).

Plaintiffs argue that Eliot's civil conspiracy claim fails, because it remains predicated upon his other deficient claims. Eliot fails to respond to this argument. *See Jones*, 2011 WL 1898243, at *6 ("Because defendants are entitled to summary judgment on Jones's state law claim for malicious prosecution, and Jones's conspiracy claim is predicated on her malicious prosecution claim, defendants are also entitled to summary judgment on count four."); *Siegel v. Shell Oil Co.,* 656 F. Supp. 2d 825, 836 (N.D.Ill. 2009), *aff'd*, 612 F.3d 932 (7th Cir. 2010) (granting summary judgment in favor of defendants on plaintiff's civil conspiracy claim because "Siegel has failed to establish his ICFA deceptive and unfair practices claim or his unjust enrichment claims").

In short, Eliot "fails to present any evidence or legal arguments as to the underlying elements of his conspiracy claim," such that the Plaintiffs are entitled to summary judgment. *Siegel*, 656 F. Supp. 2d at 836.

### 5. Additional Discovery

Eliot, in the alternative, also "respectfully seeks application of Federal Rules of Civil Procedure 56(f) to obtain either a continuance or Deposition and Discovery." [261] at 11. The Court presumes that Eliot actually intended to invoke Federal Rule of Civil Procedure 56(d), which provides that a "nonmovant" may receive "time to obtain affidavits or declarations or to take discovery" when that same party demonstrates that it currently "cannot present facts essential to justify its opposition." In either event, this effort is rejected. Eliot's untimely request is not supported by the requisite "affidavit or declaration," the discovery he seeks would not alter the Court's analysis, and fact discovery has been closed since January of 2015. Fed. R. Civ. P. 56(d).

### B. The Estate's Motion for Summary Judgment

In the other summary judgment motion pending before the Court, the Estate argues that Plaintiffs cannot establish the existence of the 1995 Trust, such that the Estate is entitled to the Policy Proceeds as Simon Bernstein's default beneficiary. The Trust and the Agreed Siblings essentially concede that: (1) absent valid countervailing provisions in the 1995 Trust, the Estate would be entitled to the Policy Proceeds; and (2) they are unable to produce the executed version of the 1995

Trust, and they must rely on extrinsic evidence to support their claim that the 1995 Trust actually exists.

A party "seeking to establish an express trust" by such evidence "bears the burden of proving the trust by clear and convincing evidence" and the "acts or words relied upon must be so unequivocal and unmistakable as to lead to only one conclusion." *Eychaner v. Gross*, 779 N.E.2d 1115, 1135 (Ill. 2002). If such evidence is "doubtful or capable of reasonable explanation upon any other theory, it is not sufficient to establish an express trust." *Id.*

### 1. Evidence Suggesting That The 1995 Trust Was Created

Plaintiffs' extrinsic evidence falls into three discrete categories: (1) testimony from the Agreed Siblings (and Linda Simon's spouse, David Simon) regarding the creation of the 1995 Trust by Simon Bernstein; (2) the affidavit of attorney Robert Spallina regarding the creation of the 1995 Trust and his understanding of Simon Bernstein's intentions; and (3) six documents that Plaintiffs characterize as "a comprehensive and cohesive bundle of evidence" supporting their allegation that the 1995 Trust exists. *Id.* Before deciding whether a reasonable factfinder could infer that the 1995 Trust exists based on this evidence, however, the Court must first determine whether this material is cognizable on summary judgment.

### a) The Agreed Siblings' Testimony

As the Court previously explained, "the testimony of David Simon and Ted Bernstein, along with the testimony of the other Plaintiffs, is barred by the Illinois Dead Man's Act to the extent it relates to conversations with the deceased or to any

14

events which took place in the presence of the deceased." [220] at 3. The Agreed Siblings and their spouses remain "directly interested" in this action, and the Court accordingly disregards their testimony regarding "any conversation with the deceased person," Simon Bernstein. 735 Ill. Comp. Stat. 5/8-201.[5]

### b) Mr. Spallina's Affidavit and Notes

In the affidavit relied upon by Plaintiffs, Mr. Spallina avers, *inter alia*, that:

- He "provided estate planning advice and represented Simon Bernstein in connection with the preparation and execution of various testamentary documents from late 2007 until his death on September 13, 2012."

- "Simon Bernstein told me he owned a life insurance policy with a current death benefit of $1.6 million (the 'Policy'). This is reflected in my attached notes of a meeting with Simon Bernstein on February 1, 2012. During this meeting and over the course of the next few months, Simon Bernstein and I discussed the Policy as part of his estate planning."

- "Simon Bernstein told me the intended beneficiaries of the Policy were his five children equally, through an irrevocable life insurance trust that was named beneficiary of the Policy."

- "Simon Bernstein also wanted to change other parts of his estate plan in 2012. Primarily, he wanted to change his current estate plan, which benefitted only three of his five children, and had caused some family disharmony. As part of these discussions, Simon Bernstein and I again discussed the Policy. In the end, Simon Bernstein told me he had decided to leave the Policy unchanged, so that all of the proceeds would go equally to his five children through the 1995 Trust. Having thus provided for all of his children, Simon Bernstein decided to alter his testamentary documents and to exercise a power of appointment he

---

[5]    While it is true that "as a general rule federal rather than state law governs the admissibility of evidence in federal diversity cases, there are a number of express exemptions to this rule, including state dead man laws." *Campbell v. RAP Trucking Inc.*, No. 09-CV-2256, 2011 WL 4001348, at *3 (C.D. Ill. Sept. 8, 2011).

held to leave all of his family's wealth to his ten grandchildren equally."

- "Simon Bernstein never showed me the 1995 Trust, although we discussed several times the fact that (i) the 1995 Trust had been created, and (ii) now that his wife had died, the beneficiaries of the 1995 Trust were his five adult children: Ted, Pam, Eliot, Jill and Lisa, each of whom would receive one-fifth, or 20%, of the proceeds of the Policy."

- "Having discussed these matters with Simon Bernstein, and based upon my years of experience as an estate planning lawyer, Simon Bernstein understood that he retained ownership of the Policy. Simon Bernstein always wanted maximum flexibility to change his estate plan, and putting ownership of the Policy into an irrevocable trust (such as the 2000 trust drafted by lawyers at Proskauer Rose) would have taken away Simon Bernstein's ability to change the Policy or the beneficiaries. Because Simon Bernstein remained the owner of the policy, he had the ability to change the beneficiary from the ILIT to a different beneficiary or beneficiaries up until the moment he died."

- "In light of Simon Bernstein's overall estate plan, including our specific discussions about the beneficiaries of the proceeds of the Policy, Simon Bernstein in fact executed new testamentary documents. Under Simon Bernstein's new Will and his Amended and Restated Trust Agreement, both of which were formally executed on July 25, 2012, his ten grandchildren are the ultimate beneficiaries of all of his wealth other than the Policy, which I have no doubt he intended to go to his children."

- "I believe that Simon Bernstein intended the Policy proceeds to be paid to his 1995 Trust, for the benefit of his five children."

[255-2] at 2-7.

The Estate argues that these statements by Mr. Spallina constitute inadmissible hearsay or expressions of subjective belief, which "cannot be used to defeat a motion for summary judgment." *Sys. Dev. Integration, LLC v. Computer Scis. Corp.*, 739 F. Supp. 2d 1063, 1069, 1078 (N.D. Ill. 2010); *see also Richardson v. Rush Presbyterian St. Luke's Med. Ctr.*, 63 Fed. App'x 886, 890 (7th Cir. 2003)

("Lampkin's averment [of what "she was informed by other patients"] is inadmissible hearsay and is not based upon her personal knowledge, so it cannot be used to defeat a motion for summary judgment."); *Hammer v. Residential Credit Sols., Inc.*, No. 13-cv-6397, 2015 WL 7776807, at *12 (N.D. Ill. Dec. 3, 2015) ("A testimonial statement about contract formation would be a statement to the effect that a contract does or does not exist. Such an out-of-court statement would be impermissible hearsay."); *Hindin/Owen/Engelke, Inc. v. GRM Indus., Inc.*, 869 F. Supp. 539, 544 (N.D. Ill. 1994) ("A statement by an employee that his employer agrees to make a proposal would be a statement offered for the truth of the matter asserted, *i.e.,* that his employer agreed to make a proposal, and constitutes hearsay."); Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

The Estate, however, paints with too broad a brush. Mr. Spallina's statements regarding his work for Simon Bernstein (including his statements regarding Simon Bernstein's modifications to his testamentary documents) are based upon Mr. Spallina's personal knowledge, and ostensibly are not hearsay. For example, Mr. Spallina might competently testify that: (1) Simon Bernstein modified his testamentary documents in 2012 to name his grandchildren (instead of his children) as the sole beneficiaries of his Estate; (2) when Simon Bernstein made those modifications in 2012, he was aware of the life insurance policy at issue here;

and (3) Simon Bernstein, in 2000, considered but ultimately decided against placing that same life insurance policy into an irrevocable trust. Considered in conjunction, this testimony suggests that Simon Bernstein provided for his children in a manner outside of his testamentary documents.

### c) Plaintiffs' Documentary Evidence

In their attempt to resist the Estate's motion for summary judgment, Plaintiffs also identify six separate documents that they contend represent evidence of the 1995 Trust's existence.

The Court previously considered this same documentary evidence when it rejected *Plaintiffs'* motion for summary judgment in March of 2016. At that time, the Court noted that this documentary evidence does "provide some evidence that the Trust was created," though it was "far from dispositive." [220] at 4. Ultimately, while the party moving for summary judgment may have changed, the weight of this documentary evidence has not, as discussed below.

### (1) Drafts Of The 1995 Trust

Two of the principal documents relied upon by Plaintiffs are unexecuted drafts of the 1995 Trust itself. As the Court previously explained, however, these "documents offer Plaintiffs little support in the absence of the testimony from David Simon and Ted Bernstein describing how some form of those exhibits was executed by Simon Bernstein," and that same testimony is excluded by the Illinois Dead Man's Act. *Id.* at 3.

### (2)     The Request Letter

Plaintiffs identify a "Request Letter" dated November 7, 1995 in support of their claim that the 1995 Trust actually exists. The Request Letter is a standardized form, which instructs Capitol Bankers Life to "Change Beneficiary As Follows"—the "Simon Bernstein Irrevocable Insurance Trust Dated June 21, 1995" is the new "successor" to the Policy Proceeds. [150-9] at 2.

### (3)     The Request for Service

Plaintiffs also rely upon a "Request for Service" form dated August 8, 1995, which seeks to transfer ownership of the life insurance policy to the "Simon Bernstein Irrevocable Insurance Trust dtd 6/21/1995." [150-19]. As the Court previously noted, however, this "document refers to 'ownership' of the policy, and does not affect the policy's beneficiaries." [220] at 4.

### (4)     The Beneficiary Designation

In a "Beneficiary Designation" dated August 26, 1995, Simon Bernstein designated the "Simon Bernstein Irrevocable Insurance Trust" as the beneficiary to receive his death benefits. Plaintiffs suggest that this designation is probative of the fact that the Trust actually exists; however, "this document does not refer to the Trust at issue here, the 'Simon Bernstein Irrevocable Insurance Trust dated 6/21/95.'" [220] at 4. It remains "unclear from the record if that was an oversight, or was intentionally done to refer to a distinct trust." *Id.*

### (5)     The IRS Form 22-4

Finally, Plaintiffs point to an IRS "Form 22-4" (or application for an Employer Identification Number) in support of their contention that the 1995 Trust exists as alleged. [150-20]. The Form 22-4 reflects that it was executed on behalf of the "Simon Bernstein Irrevocable Insurance Trust" and signed by Shirley Bernstein, Simon's wife. *Id.* It is unclear from the record whether the Form 22-4 was actually submitted to, or approved by, the IRS. *Id.*

### 2.     The Weight of the Evidence

As the Court previously explained, Plaintiffs' documents, while not "dispositive," provide "some evidence that the Trust was created." [220] at 4. In fact, Plaintiffs' case has improved since the Court first considered their evidence in March of 2016, in light of the new affidavit from Mr. Spallina, and the Court remains incapable of resolving these disputed factual questions on summary judgment.

A reasonable factfinder could infer, based upon both the potential testimony of Mr. Spallina and the documentary evidence previously discussed, that Simon Bernstein created the 1995 Trust in the manner alleged by Plaintiffs. The Estate's motion for summary judgment is accordingly denied.

## IV.    Conclusion

For the foregoing reasons, Plaintiffs' motion for summary judgment on Eliot Bernstein's claims [239] is granted, and the Estate's motion for summary judgment [245] is denied.

Dated: January 30, 2016

Entered:

John Robert Blakey
United States District Judge